## HUNTER v. SENN.

1. CITIES AND TOWNS—DISPENSARY.—Members of a town council being electors, by signing a petition asking for an election on question of "Dispensary" or "No Dispensary," are not thereby disqualified from deciding if such petition be signed by one-fourth of the qualified electors of the municipality.

2. IBID.—ELECTIONS—REGISTRATION.—A special municipal election is not rendered invalid by failure of municipal registrar to turn over to managers municipal registration book, but he in effect does this when he furnishes the managers with a list of registered voters, and where no elector is allowed to vote without producing his municipal registration certificate, the election is valid.

3. IBID.—IBID.—BALLOTS—DISPENSARY.—There is no law prescribing the form, size and kind of ballots to be used in municipal election on question of "Dispensary" or "No Dispensary."

4. IBID.—IBID.—DISPENSARY—WORDS AND PHRASES.—In such election a certificate of the intendant, wardens and managers, of the result is a declaration thereof, within the meaning of dispensary law, 22 Stat., 129.

5. IBID.—IBID.—CONSTITUTION—REGISTRATION, 22 STAT., 45, 46.—Under Constitution of 1895 (art. II., sec. 12), the electors of a municipality must be registered before each election, and the provisions of the act as to municipal elections (22 Stat., 45, 46,) seem to conflict with this constitutional provision, where it requires registration only before each general election. Requisites to vote in municipal elections stated.

6. IBID.—IBID.—22 STAT., 459, 460.—In a special election to ascertain if additional territory should be added to a town, under 22 Stat., 459, 460, the provisions thereof are complied with in that: (1) A petition of a majority of the citizens residing within the proposed annexed territory is presented to the town council asking for such election; (2) managers to conduct such election in the town and annexed territory are appointed by the town council; (3) result of election is sent to secretary of State, which is a declaration of the result.

7. IBID.—IBID.—REGISTRATION—PRACTICE—APPEAL.—In such election the electors in the annexed portion are not to be registered by the municipality, but must be qualified electors; but such question can only be made by appeal from action of managers.

Petition for injunction in the original jurisdiction of this Court by Joseph H. Hunter, J. A. Simpson, D. I. Shealy, J.

P. Bowers, R. L. Luther, B. S. Dominick, and Oliver P. Harris against Jacob Senn, J. R. Scurry, and J. P. Harmon, as members of the county board of control for Newberry County, under dispensary law.

*Messrs. Johnstone & Welch,* for petitioners.

*Messrs. Cole L. Blease* and *Hunt, Hunt & Hunter,* for respondents.

The report of Ellis G. Graydon, special referee, on the issues of fact is as follows:

"To the Supreme Court of the State of South Carolina: An order of this Court having been made in the above stated case on the 7th day of January, 1901, whereby it was directed 'that all the facts raised herein be referred to the undersigned, as special referee, for his report thereon; that he return with his report all the testimony taken by him, and that he state his impressions as to the facts, and that he report as soon as practicable,' I respectfully report: That I have taken all the testimony offered by both sides to this controversy at sundry references held by me, the testimony held irrelevant or incompetent by me being found on pages 40, 41, 72, 79, 82 and 84 of the testimony, and marked excluded sheets A, B, C, D, E and F, and excluded exhibit G. The testimony which is herewith filed, was taken by James D. Campbell, Esq., the efficient stenographer of the seventh judicial circuit, and is full and accurate. The following appear to me to be the issues involved in this case, some being issues of fact and others questions of law, to wit:

"1. That it was never determined by the town council of Prosperity that the petition for an election on the question of 'Dispensary' or 'No Dispensary' was signed by one-fourth of the qualified voters of said town.

"2. That the intendant and two of the wardens of the said town were signers of the said petition.

"3. That the petitioners herein and others protested against any action by the intendant and the two wardens

who signed the petition for said election upon the said petition, for the reason that they were interested parties and had no right to pass on the validity of the petition.

"4. That the said protestants further objected that the two remaining members of the town council could not pass upon the sufficiency of the petition, because they did not constitute a quorum of the said town council.

"5. That notwithstanding said protest, the said town council attempted to pass an ordinance ordering said election.

"6. That said ordinance was null and void for the foregoing reasons, and also for the following additional reasons, to wit: (a) That it was provided by said ordinance that 'only voters registered as hereinafter required shall be entitled to vote in said election,' whereas the act of 1896 provides that the registration made for each *regular* municipal election shall be used for all *special* elections held in the municipality until ninety days preceding the next regular election. (b) That said ordinance failed to appoint a supervisor of registration for said special election, but permitted said special registration to be made by one who was the regular supervisor of registration at the last regular election, but was not thereafter appointed by ordinance or by the intendant. (c) That said ordinance was fatally defective, in that it made no provision that the election ordered thereby should be conducted as other special elections.

"7. That said election was not conducted as other special elections, for the following reasons: (a) No form of ballot was provided for or used, but voters were allowed to vote on any kind of a ballot, ranging from the margin of a newspaper to brown wrapping paper. (b) That the managers of the election allowed non-residents and other persons not qualified to vote, and that the result of the election was thereby changed. (c) That the return was not canvessed by the said town council nor the result of the election declared, nor did the said town council keep any record or minutes of the return and result.

"8. That the said petition for the election was not filed with the clerk of the town council or placed where the public could inspect it, but was kept private.

"9. That prior to the holding of the election on the question of annexing territory then outside of the corporate limits of the town of Prosperity, on August 3d, 1899, no petition signed by a majority of the freeholders of the territory sought to be annexed, was presented to the said town council praying that said election be held.

"10. That the said town council attempted to appoint the managers of said election both for the town and the territory sought to be annexed.

"11. That one of the managers appointed for the said territory was not a qualified voter of the State.

"12. That of the managers of said election appointed for said town only one served during the entire time the polls were open.

"13. That one of said managers never served at all, and the others only a part of the time.

"14. That after 12 o'clock one of the managers went to Laurens, leaving only one manager at the polls.

"15. That this manager so left called in a person to assist him, who was not appointed a manager and was not sworn, and that these two counted the votes and made out the return.

"16. That neither the return so made nor the return from the territory sought to be annexed, was dated or sworn to.

"17. That the returns of said election from the polls within the town were signed by only one of the managers appointed by the town council.

"18. That no action was ever taken by the town council on the said returns.

"19. That the result of said election was never declared or published, as required by law.

"20. That said territory was not then and has not since been declared a part of said town.

"21. That enough votes from this territory so sought to

be annexed were allowed to be cast in the election on the
question of 'Dispensary' or 'No Dispensary,' to give a small
majority in favor of the dispensary.

"22. That the ordinance ordering the annexation election
provided that the managers appointed thereby should make
a sworn return of the votes cast at the two polls, and that no
such return was made.

"23. That the said annexation election was void because
the supervisor of registration did not furnish the managers
with the registration book.

"24. That the election on the question of 'Dispensary' or
'No Dispensary' was void, for the reason that the super-
visor of registration did not furnish the managers with the
registration book.

"It seems to me that this proceeding is an attack upon the
legality and validity of the election held in the town of
Prosperity on the 8th day of October, 1900, on the question
of 'Dispensary' or 'No Dispensary.' Looked at from that
point of view, I should hold, if I had the power, that it is
not competent now to go behind the proceedings taken on
the question of annexing territory formerly outside of the
town of Prosperity, but it seems to me that I have no power
under the order of reference to pass upon any question as to
the relevancy of allegations of the petition and the issues
raised thereby; and I, therefore, try to report on all ques-
tions of fact raised in the pleadings; leaving their relevancy
and materiality to be passed on by the Court.

"It seemed to me that the question raised as to the size and
shape of the ballots is not material, as my attention has not
been called to any statute regulating the size, shape or color
of ballots in municipal elections, general or special, but I
have taken the testimony relating thereto, under my concep-
tions as to my powers under the order of reference, and it is
herewith submitted, with the ballots used at the election on
the question of 'Dispensary' or 'No Dispensary.'

"The records and minutes of the town council of Pros-
perity seem never to have been very full and complete, and

many of them were lost or mislaid, and could not be produced at the reference. Secondary evidence was received as to some of these lost documents, and as to others no evidence was offered at all. Taking up the two elections in chronological order, it seems that the cemetery used by the residents of the town of Prosperity was, up to the 3d of August, 1899, outside the limits of the town. The citizens of the town wanted to include it in the town, in order that the town council might have jurisdiction of it and take better care of it. In order to preserve the symmetry of the town, as it seems, it became necessary to take in other contiguous territory. Accordingly, a petition was duly filed by a majority of the freeholders of said territory, praying that an election be held on the question of annexing said territory to the town of Prosperity. Managers were appointed, the election was held, the managers counted the votes and certified the result to the town council of Prosperity, which declared that the territory was annexed to the town. Shortly afterwards, the clerk of the town council, by direction of the intendant and wardens, filed with the secretary of State the proper certificate, accompanied by a plat made by the surveyor appointed to make the survey, that the said territory was annexed to the town of Prosperity, and the secretary of State forwarded to the town council a certificate that the proper papers had been filed in his office, and also published the same in his report for the year 1899, page 31. No one at that time questioned the regularity and validity of that election, nor has it ever been questioned since till the filing of this proceeding. There was no protest or contest filed with the managers of the election or with the town council, nor was there any objection made by any one. From the little testimony I have before me as to that election, but more from the absence of evidence to the contrary, it seems to me that the allegations made by the petitioners as to the irregularity and invalidity of the annexation election are not supported by the testimony. Ever since the said annexation election was held, the citizens of the annexed ter-

4—61

ritory have been recognized as citizens of the town of Prosperity, and have claimed and exercised without question all the rights and duties appertaining to them as citizens of said town, such as voting, making returns and paying taxes on their property, and paying their commutation taxes or performing street duty.    Coming down to the election on the question of 'Dispensary' or 'No Dispensary,' it seems that a petition was filed with the town council some time during the month of August, praying that an election be held on that question, and the town council passed an ordinance providing for such election.    Later it was remembered that an election had been held on that question within a year, and the town council rescinded the ordinance providing for an election on September 10, 1900.    On or about the 4th of September, 1900, another petition was presented, praying the town council to order an election on the question of 'Dispensary' or 'No Dispensary.'    This petition was presented to the town council at a meeting called for that purpose.    A written protest was filed by the petitioners herein, the Rev. Joseph W. Blanton and others, against any action on the said petition by Dr. George Y. Hunter, the intendant, and Messrs. A. H. Hawkins and W. W. Wheeler, two of the wardens, on the ground that they were signers of the petition and interested parties, and by the other two wardens on the ground that they did not constitute a quorum of the town council.    This petition had twenty-five signatures to it.    It was carefully scanned by the members of the town council and by Mr. A. M. Lester, the clerk, to see if it contained the names of one-fourth of the qualified voters of the town.    The town council tried to ascertain who were qualified voters by counting all they thought entitled to registration.    By this method they found from ninety to ninety-three.    They then instructed Mr. Lester, the clerk, to bring his registration book.    He reported that he could not find it, but that there were fifty-five voters registered for the last regular town election and from seventy to seventy-five registered for the last election on the question of 'Dispensary' or 'No Dispen-

sary.' The town council then, with the assistance of Mr.
Lester, carefully canvassed the names on the petition, struck
off two names, those of Messrs. McCloud and Gus. Blease,
and decided that the other tweny-three were qualified voters
of the town, and that they constituted one-fourth of the
qualified voters of the town. Their finding on this ques-
tion was correct, allowing that these twenty-three were
qualified voters (and no question seems to have been made
that they were), if either method of computation be adopted,
to wit: on the basis of ninety-three persons entitled to regis-
tration, or on what Mr. Lester stated to be the numbers reg-
istered for the two preceding elections. If the names of
Messrs. Blease and McCloud should have been struck from
the petition, then they should have been struck from the list
of ninety-three also, and that would leave ninety-one. A
motion was then made by Mr. B. B. Schumpert, one of the
wardens, but not a signer of the petition, that the town
council order the election. This motion was put and carried
unanimously, Messrs. S. L. Fellars, M. B. Bedenbaugh and
O. L. Schumpert were appointed managers, and Mr. Lester,
the clerk, was instructed to prepare the ordinance from an
old ordinance on the same subject that was then before the
town council, the names and dates being then and there
changed. Mr. Lester performed this duty, and presented
the ordinance to Dr. George Y. Hunter, the intendant, who
signed it, and afterwards Mr. Lester signed it and attached
the corporate seal of the town council to it. Notice of the
election was published by the clerk by posting or publishing
the ordinance, and the election was held on the 8th day of
October. Mr. Lester opened his books of registration and
registered the voters for that election, and furnished the
managers with a list of the registered voters. I assume that
the list furnished was that of the special registration, but
there is no evidence before me as to how many persons were
allowed to vote at that election that were not registered for
the regular town election held in the spring of 1900. No
question seems to have been made as to the right of any one

to vote, except the Rev. Mr. Airiail, who at first declined to show his registration certificate and insisted on being allowed to vote without doing so. This the managers peremptorily declined to allow him to do, and he produced it and was permitted to vote. The managers required all to show their registration tickets before allowing them to vote, and allowed none but registered voters to vote. No protest or contest was filed either with the managers or with the town council. When the polls closed the managers announced the result, after counting the votes, made out a sworn return of the result, and filed it with the town council, which indorsed its approval of the return by causing the intendant, the wardens and the clerk to sign the same. The town council afterwards communicated the result to the board of control of Newberry County. No question seems to be made in the petition that the proceedings of the county board of control of Newberry County and the State board of directors, after the said result was communicated to them, were regular.

"My impressions as to the facts alleged in the petition and denied by the answer or return of the respondents and constituting the issues herein, are as follows:

"I. That it was determined by the town council of Prosperity that the petition for an election on the question of 'Dispensary' or 'No Dispensary' was signed by one-fourth of the qualified voters of the said town.

"II. That more than one-fourth of the qualified voters of the said town did sign the said petition.

"III. That Dr. George Y. Hunter, intendant, and Messrs. A. H. Hawkins and W. W. Wheeler, two of the wardens of said town, were signers of the said petition.

"IV. That the petitioners herein and others filed with the said town council a written protest against any action on the said petition by the intendant and the two wardens who signed the petition, on the ground that they were interested parties and were disqualified to pass on the same.

"V. That the said protestants further objected that the

two remaining members could not pass upon the petition because they did not constitute a quorum of the town council.

"VI. That the said town council passed an ordinance ordering that an election be held in the said town of Prosperity on the 8th day of October, 1900, on the question of 'Dispensary' or 'No Dispensary.'

"VII. That the said ordinance provides that 'only voters registered as hereinafter required shall be entitled to vote in said election.'

"VIII. That the said ordinance provides that the registration of voters for said special election should be made by A. M. Lester, the supervisor of registration of the town of Prosperity, from the 4th day of September, 1900, to the 1st day of October, 1900, and that he should then file the registration book in the office of the clerk of said town council.

"IX. That no provision is made in the said ordinance that the said election should be conducted as other special elections.

"X. That of the seventy-seven ballots voted, forty were for 'Dispensary' and thirty-seven for 'No Dispensary.' Of the forty ballots with 'Dispensary' written on them, one appears to be a part of an envelope that had been used, and one appears to be of cheap draughting paper, being of a light yellow color. Of the thirty-seven ballots with 'No Dispensary' written on them, one appears to be a portion of the margin of a newspaper, one appears to be of cream-colored wrapping paper, and one seems to be a part of a cotton weigher's blank, from the fact that it has lines both across and up and down, and the word weigher is printed on it. All the other ballots seem to be of white writing paper, but of different shapes and sizes.

"XI. That the managers of the election did not allow non-residents and other persons not qualified to vote, but that all persons who voted were registered and entitled to be registered. No evidence was offered except as to one voter, Mr. Lester Bedenbaugh, and the evidence shows that he was a resident of the town at the time of the election and had been

for about two years, and that he had not left the town with the intenton of remaining away and residing elsewhere. His family were at that time and are now living in said town and he still makes his returns and pays his taxes therein.

"XII. That the return of the managers was approved by the town council, but that they kept no other minute or record of it than the return itself.

"XIII. That no complaint of irregularity or illegality in the said election was made by any one, and that no protest or contest was filed either with the managers or with the said town council.

"XIV. That the petition for said election was not formally filed with the clerk of the town council, but that it was before the council at its meeting to take action upon it, and was afterwards in the possession of the intendant, Dr. Hunter, open to the inspection of all who cared to see it.

"XV. That prior to the annexation election a petition signed by all the freeholders in the territory sought to be annexed was presented to the said town council, praying that said election be held.

"XVI. That the said town council appointed the managers of said election both for the town and the territory annexed.

"XVII. That there is no evidence that one of the managers appointed for the said territory was not a qualified voter of the State.

"XVIII. That there is no evidence that only one of the managers of said election served during the entire time the polls were open.

"XIX. That there is no evidence that one of the managers did not serve at all.

"XX. That all three of the managers of the town polls served until about 12 o'clock, or shortly thereafter. About that time, Mr. Schumpert, one of the managers, received a telegram calling him to Laurens. He went to see the intendant and some of the wardens, and obtained their consent to leave and put Mr. Counts in his place. He left Mr.

Counts and the other two managers in charge of the polls. It does not appear whether Mr. Counts was sworn in or not, and it does not appear that he and the other two managers did not remain in charge of the polls until the votes were counted and the result declared.

"XXI. That it does not appear from the evidence that the returns were not dated or sworn to.

"XXII. That it does not appear that the returns of the said election were signed by only one of the managers appointed by the town council.

"XXIII. That the result of said election was declared and published, that the town council approved the return and certified the result, with the necessary papers to the secretary of State, and that he certified and published that the said certificate and other papers had been filed in his office.

"XXIV. That said territory was then declared to be a part of said town.

"XXV. That there is no evidence that enough votes from the annexed territory were allowed to be cast to give a small majority in favor of the dispensary. It is not shown how many voters from the annexed territory voted in the election on the question of 'Dispensary' or 'No Dispensary,' or how they voted. Mr. E. K. Bedenbaugh, a voter from the annexed territory, testified that he voted for the dispensary, and as his son, Mr. Lester Bedenbaugh, was a candidate for the position of dispenser, it may be fair to assume that he voted for it, but there is no evidence as to how many others from the annexed territory voted or how they voted.

"XXVI. That there is no evidence that a sworn return of the annexation election was not made.

"XXVII. That there is no evidence that the registration book was not furnished to the managers of the annexation election, nor is there any evidence that any other persons than qualified voters were allowed to vote at said election. The evidence shows that the registration book was furnished.

"XXVIII. That the supervisor of registration of the

town did not furnish to the managers of the election upon the question of 'Dispensary' or 'No Dispensary' the registration book, but furnished them a list of the voters registered by him for said election."

June 29, 1901. The opinion of the Court was delivered by

MR. JUSTICE POPE. This is a proceeding in the original jurisdiction of this Court, wherein the petitioners, as citizens of the town of Prosperity, in the county of Newberry and State of South Carolina, seek a perpetual injunction to issue out of this Court, whereby the respondents, who compose the county board of control for Newberry County, in said State, under the dispensary law of this State, may be enjoined and restrained from proceeding any further in the location of a dispensary in the town of Prosperity, in said county and State, and the appointment of the dispenser therefor, under the election held, or attempted to be held, at Prosperity, in said State, upon the question of "Dispensary" or "No Dispensary," on the 8th day of October, 1900. The grounds for such relief as set out in the petition herein are about as follows:

I. That the petitioners are freeholders and citizens of the town of Prosperity, in the county of Newberry, in the said State, which is a corporation under the laws of the State.

II. That the respondents are the members composing the board of control of the county of Newberry, holding such office under, and owing their official position to, the act of the General Assembly of this State of South Carolina, approved on the 24th day of December, 1892, and the amendments thereto, which said act and amendments are known as the dispensary law. That among the various duties and powers of the said members of the said board of control is the appointment of dispensers and the location of dispensaries within the said county.

III. That by the said dispensary law, it is provided, among other things: "That any county, town or city wherein

the sale of intoxicating liquors was prohibited by law prior to July 1st, 1893, may secure the establishment of a dispensary within its borders in the following manner: Upon petition signed by one-fourth of the qualified voters of such county, town or city wishing a dispensary therein being filed with the county supervisor, town or city council, respectively, they shall order an election submitting the question of 'Dispensary' or 'No Dispensary' to the qualified voters of such county, town or city, which election shall be conducted as other special elections; and if a majority of the ballots cast be found and declared to be for dispensary, then a dispensary may be established in said county, town or city."

IV. That by an act passed by the General Assembly of this State, approved the 4th day of February, A. D. 1882, the sale of all intoxicating liquors in the town of Prosperity was prohibited within the limits of the said town.

"V. That on the 4th day of September, 1900, the town council (consisting of George Y. Hunter, as intendant, A. H. Hawkins, W. W. Wheeler, S. S. Birge and B. B. Schumpert, as wardens, of the said town of Prosperity) was called together and at said meeting a petition was presented by the said intendant, purporting to be signed by one-fourth of the qualified voters of said town, and asking for an election upon the question of 'Dispensary' or 'No Dispensary;' that it was never determined by said council whether or not there was one-fourth of the qualified voters of said town signers of said petition; but on the contrary this important essential was assumed and taken for granted by the said council, without ascertaining this fact as under the law they were bound to do, ere any action on said petition could be taken; that, besides this, there were three of the members of said council, viz: George Y. Hunter, intendant, and W. W. Wheeler and A. H. Hawkins, wardens, as signers of said petition; that at said meeting of the said council, the petitioners herein, together with Rev. J. W. Blanton and Rev. W. H. Airiail and Mr. W. P. B. Harmon, by a protest in writing signed by all of them, solemnly objected to the said George Y. Hunter, as

intendant, and W. W. Wheeler and A. H. Hawkins, as wardens, taking any action upon the said petition, upon the ground that the said intendant and wardens were interested parties and could not pass judicially upon a matter to which they were parties; and they objected further to the remaining two members of said council considering the petition, upon the ground that they would not constitute a quorum, the other three being disqualified by interest and being parties themselves; that in spite of said protest and objection, the said intendant and wardens acted upon their own petition, and attempted to grant the same by passing an ordinance calling said election; that said ordinance was null and void for the reasons heretofore given, and for the additional reasons: 1st. It was provided by said ordinance that 'only voters registered as hereinafter required shall be entitled to vote in said election,' whereas it is provided by sec. 24 of an act approved March 5th, 1896, after providing for municipal registration ninety days before every regular election, further provided that 'such registration shall be used for all *special* elections in the municipality until ninety days preceding the next regular election.' 2d. If such special registration was necessary, then said ordinance failed to appoint a supervisor thereof; while on the contrary, the registration was permitted to be done by one who had been supervisor of registration at the last regular election, but who was appointed by ordinance, nor was he ever thereafter appointed either by the intendant, who alone under the said section of the act of 1896 could appoint such supervisor of registration. 3d. Said ordinance was further fatally defective, in that provision was made that said election should be conducted as other special elections. That said attempted election was not conducted as other special elections: 1st. In that no form of ballot was provided or used, but on the contrary every voter was allowed to use just any kind of a ballot, ranging from the margin of a newspaper to brown wrapping paper, and of all shapes and sizes. 2d. In that the managers of said election allowed non-residents and dis-

qualified voters to vote in such numbers that a majority of the so-called ballots were in favor of the dispensary; which result would not have been if these non-residents and disqualified voters had not been allowed to vote. 3d. In that the purported return was never canvassed by the said council, nor was the result ever declared; nor was any record or minutes ever kept which show anything as to the returns and results. That on all other occasions when the question of the dispensary was up, the petitions asking for an election was always filed with the clerk of the said council, but on this occasion this was not done, but on the contrary the same was kept private and was not placed where the public could see it and inspect it.

"VI. That the said respondents, taking the result of said attempted and illegal election as a decision of the question of 'Dispensary' or 'No Dispensary,' are now undertaking to locate a dispensary within the said town of Prosperity, and to appoint a dispenser therefor; all of which will fully appear by reference to the advertisement hereto annexed, marked exhibit 'A,' and made a part of this petition; and the said respondents will locate said dispensary within said town and appoint a dispenser therefor, unless they are restrained.

"VII. That on the 3d day of August, 1899, an election, attempted to be ordered by the said town council of the said town of Prosperity, S. C., was attempted to be held upon the question of increasing the corporate limts of the said town; that no petition of 'a majority of the freeholders of territory' sought and attempted to be annexed was ever 'submitted to said council,' nor, indeed, was any petition whatever 'submitted to said council, praying for an election to be ordered to see if such territory should be included in said town;' that at such said attempted election, the said council attempted to appoint the managers both for the territory attempted to be annexed and for the said town, but one of the managers thus attempted to be appointed for the said territory was not a qualified voter of the State of South Carolina;

and of the managers attempted, as aforesaid, to be appointed by the council for the said town, only one served during the entire time the polls were open, while one never served at all, and the other only a part of the time, and after 12 o'clock he left on the train for Laurens, S. C., leaving only one manager at the polls; that the said manager left at the polls went of his own accord and called in some one to assist him; that the one so called was never attempted to be appointed, nor was he ever appointed manager for the said election, nor was he ever sworn in as a manager; that the said manager and this person afterwards as aforesaid called to his assistance, conducted the said election and counted the votes attempted to be cast at said election, and made out what purported or attempted to be a return, but the same was not even dated nor sworn to, nor was the return from the said territory dated or sworn to; and the return attempted as aforesaid to be made from the polls within the said town were only signed by one manager appointed as aforesaid by the said council; that when these purported returns came before the said council, no action by the council thereon was ever taken or had; nor were any results of the said election ever declared or published, as required by law; that the said territory was not then, and has not been since then, declared 'part of said town;' that enough votes in this said territory, attempted as aforesaid to be annexed to the said town, were allowed to be cast in the said 'Dispensary' or 'No Dispensary' election to give a small majority in favor of the said dispensary; that by the ordinance which the said council enacted calling for said election, it was provided that the managers appointed by said ordinance should make a sworn return of the votes cast at the two polls; that no such return was ever made or filed with said council; that if a special registration is necessary at special elections as was provided for in the case of the said dispensary election, then said ordinance was fatally defective, in that no provision was made for a special registration; and if it was necessary to have such special registration in the case of a special election

upon the dispensary question, then it was necessary to have a special registration upon the question of annexing territory to the limits of said town; but if it was not necessary for an election held on 3d of August, 1899, upon the annexation question, to have a special registration, then it was not necessary in election held on the 8th of October, 1900, upon the dispensary question, to have a special registration; in either event, there has occurred a fatal defect, and the results are void and are vitiated thereby.

"VIII. That both the said elections are void and vitiated for the further reason, sec. 29 of the said act, approved March 5th, 1896, was not complied with, for the supervisor of registration did not furnish the said managers with the book of registration for the said town, and the said managers, therefore, did not know who was a qualified voter or who was not a qualified voter.

"IX. That the foregoing facts are fully substantiated and shown by the annexed affidavit of A. M. Lester, as clerk of the town council, which said affidavit is marked exhibit 'B,' and is made a part of this petition.

"Wherefore, the petitioner prays: That the said respondents may be perpetually enjoined and restrained from proceeding any further with the location of the said dispensary at Prosperity and the appointment of the dispenser therefor, under the said election upon the said question of 'Dispensary' or 'No Dispensary,' attempted to be held within the said town on the 8th of October, 1900. That they may have such other relief as may be right and equitable."

To this petition the respondents first demurred, and the demurrer being overruled, then answered, wherein they admitted the first two paragraphs of the petition, and also that by the act of 1882, the town of Prosperity was declared a town wherein intoxicating liquors should not be sold, but the respondents vigorously denied all the remaining allegations of fact, and joined issue as to all conclusions of law. These issues of fact caused this Court to pass an order, wherein Ellis G. Graydon, Esq., was appointed special ref-

eree, and directed to hear the testimony and afterwards submit to this Court his impressions as to such issues of fact. In April last, the special referee submitted all the testimony, together with a very able report, and in his report he found all the facts against the petitioners. We direct that this report (but not the testimony) be included in the report of this case.

We have very carefully examined this report and the testimony taken before the special referee, and from that examination we agree with the impressions made upon his mind thereby. We could content ourselves with simply adopting the findings of fact by the referee and applying the law thereto. But we have no doubt the petitioners would feel better satisfied to see from our opinion that we had gone carefully over each of their propositions in the light of the law and the testimony—hence we do so, giving as a preface the legislative history of the town of Prosperity.

The village of Frog Level was incorporated in December, 1851. See p. 114, 12 vol. Stat. at Large. The village of Frog Level was incorporated as the town of Frog Level in March, 1872. See 15 vol. Stat. at Large, pp. 89 and 90, with the same powers and privleges as town of Mannng, 14 Stat. at Large, 674. The town of Frog Level became the town of Prosperity on 22 February, 1873. See 15 Stat. at Large, 365. The sale of liquors was forbidden in town of Prosperity on 3d February, 1882. See 17 Stat. at Large, 774. Its *status* as to the sale of liquors remained until 8th October, 1900. This seems to explain the zeal with which the petitioners in this proceeding have pressed their opposition to the sale of liquors in such town of Prosperity, even in a dispensary there to be located.

The objections urged by the petitioners seem to divide themselves into two groups: *First.* That the election held on the 8th October, 1900, was invalid, because the laws governing elections in municipalities of the State were violated. *Second.* That such election was rendered invalid because the territory which was annexed to the town of

Prosperity in the year 1899, never legally became incorporated in said town, and, therefore, the participation of the legal voters residing within the annexed territory in the election held on 8th October, 1900, on the question of "Dispensary" or "No Dispensary," was illegal and rendered such election invalid. We will consider these matters in their order.

As to the first, it is proper to remark that an objection was taken that the ordinance passed by the town of Prosperity, in the month of September, 1900, providing for the election on 8th October, 1900, on the question of "Dispensary" or "No Dispensary," failed to have the seal of the town thereon. The 6th section of the act incorporating the town of Manning allowed such town to use a seal, and required that all ordinances passed by it shall have such seal affixed to them. See 675 p. of act, as found in 14 Stat. at Large. Hence, as the town of Prosperity was given the same powers as the town of Manning, the seal of the town of Prosperity should be affixed to any ordinance passed by the latter. An examination of the testimony shows that the ordinance in question of the town of Prosperity did have the seal of said town affixed thereto. Therefore, this objection must be overruled.

Again, it is urged that the requirements of section 7 of act in regard to dispensaries, found at page 129 of 22 Stat. at Large, were not complied with in conducting the election held on the 8th October, 1900, on the question of "Dispensary" or "No Dispensary." The language there employed is as follows: "Sec. 7. * * * *Provided, however,* That any county, town or city wherein the sale of alcoholic liquors was prohibited by law prior to July 1, 1893, may secure the establishment of a dispensary within its borders in the following manner: Upon petition signed by one-fourth of the qualified voters of such county, town or city wishing a dispensary therein being filed with the county supervisor or town or city council respectively, they shall order an election submitting the question of 'Dispensary' or

'No Dispensary' to the qualified voters of such county, town or city, which election shall be conducted as other special elections; and if a majority of the ballots shall be found and declared to be for a dispensary, then a dispensary may be established in said county, town or city." And it is claimed by the petitioners that inasmuch as certain citizens of said town of Prosperity protested to its town council that inasmuch as Dr. G. Y. Hunter, who was intendant, and A. H. Hawkins and W. W. Wheeler, who were wardens of said town of Prosperity, had signed the petition for the establishment of a dispensary in said town, being a majority of said town council, they were not competent to pass upon such petition to determine if one-fourth of the qualified voters of said town had signed said petition; and that if said three did not act thereon, the remaining two were not a majority of the council and could not act as a legal council. It is sufficient to say that each one of these three gentlemen were property owners in said town, were registered voters of said town, and were not declared incompetent to discharge their official duties as involved in their membership of said town council; but from every standpoint, there was a one-fourth of the qualified voters of said town who signed such petition, excluding the intendant and two wardens who had signed the petition. So this objection must be overruled.

Again, it is suggested that the book of registration was not turned over to the managers who conducted such special election. No doubt, a part of section 29 of an act entitled "An act to provide for the registration of all electors in this State qualified to vote, in State, county, municipal, congressional and presidential elections," 22 Stat. at Large, 47, does require the municipal supervisor of registration to turn over to the managers of special elections his books or book of registration before an election is held, but there is no provision in the section, or any other part of the act in question, which will render such election invalid, because the supervisor did not discharge his duty. In effect, the supervisor (municipal) did do this when he filed a list

of the qualified electors with such managers.   However that may be, this same section (29) provides: "and no elector shall be allowed to vote in any municipal election whose name is not registered as herein provided, *or who does not produce a municipal registration ticket at the polls."* The managers at this special election swear that no person was allowed to vote at such election held on the 8th of October, 1900, unless he produced his municipal registration ticket. This upsets this objection.

Again, it is urged that the ballots cast were written upon the blank margin of a newspaper in a few instances, or on wrapping paper in other instances, or on white paper in other instances, but that all such tickets were irregular in size. No one rises up to say even at this late day, that the wishes of the voter as to "Dispensary" or "No Dispensary" did not plainly appear from the writing put upon such tickets.   There is no law which condemns the course pursued by the electors at this special municipal election.   This objection is overruled.

Again, the petitioners claim that there was no *declaration* by the town council of the result of such election.   It is true, the said section 7 of 22 Stat. at Large, p. 129, does contain the words "* * * and if a majority of the ballots cast *be found and declared* for the dispensary, then a dispensary may be established * * *"   But the overwhelming weight of the testimony here adduced shows that the managers and the intendant and wardens of the town council, in writing, certified to the result of the balloting.   This is a declaration of the result.   This objection is overruled.

And, again, it is contended by the petitioners that the registration of the qualified voters should not have been made immediately preceding the special election held on the 8th day of October, 1900, but that the registration made for the last general election in such town of Prosperity for the officers of intendant and wardens should have governed, and that this special registration renders the election void.   There

5—61

can be no question that the act governing registration of voters, even in special elections in the municipalities of this State at section 24 (pages 45 and 46 of 22 Stat. at Large), does provide: "Sec. 24. Ninety days before the holding of a regular election in any incorporated city or town in this State, after the general election of 1896, the mayor or intendant thereof shall appoint one discreet individual, who is a qualified elector of such municipality, as supervisor of registration for such city or town, whose duty it shall be to register all qualified electors within the limits of the incorporated city or town. The names of all qualified electors of such municipality shall be entered in a book of registration which, at least one week before the election and immediately after holding of the election, shall be filed in the office of the clerk or recorder of such city or town, and shall be a public record open to the inspection of any citizen at all times. *Such registration shall be used for all special elections in the municipality until ninety days preceding the next regular election* * * * Immediately preceding any municipal election to be held in any incorporated city or town in this State, the supervisor or supervisors of registration (as the case may be) shall prepare for the use of the managers of election of each polling precinct in such city or town a registration book or books for each polling precinct in said city or town, containing the names of all electors entitled to vote in such polling precinct at said election." In sec. 26 of this act it is provided as an indispensable prerequisite for registration in a municipality, that the applicant shall present a certificate of registration from the board or supervisor of registration of the county wherein the municipality is located, "and the production of such certificate, together with proof of his residence within the municipality for four months preceding such election, and the payment of all taxes assessed against him due and collectible for the previous fiscal year," shall entitle the applicant to registration. The act regulating registration is intended to carry into practical operation the provisions of the Constitution of 1895 regu-

lating the same. A summary of the terms of the latter on the subject, so far as municipal registration of voters is concerned, is as follows: *First.* A county board registration certificate of registration of the elector must be produced. *Second.* Residence for four months before the election in the town or city in which he desires to vote must exist. *Third.* The payment of all taxes due and collectible for the preceding fiscal year must appear to have been made by the applicant for registration. *Fourth.* "The General Assembly shall provide for the registration of all voters before each election in municipalities" (see art. II., sec. 12, of Constitution of the year 1895). It would seem, therefore, from a comparison of the terms of the act regulating registration with those of the Constitution just quoted, that the General Assembly has, of its own motion and not in obedience to any mandate of the Constitution, provided an additional requirement, viz: that registration of qualified voters in municipalities must be had only for what may be called *regular* as contradistinguished from *special* elections, in order for them to be allowed to vote on any question submitted at a special election. In the case at bar, there is no contention as to the fact that every voter, who offered to vote and did actually vote at this special election held on the 8th day of October, 1900, had in his possession a certificate of registration issued to him by the county board of registration; that he also had paid his taxes for the preceding fiscal year, and that he had resided in the town of Prosperity for more than four months preceding the said special election; and also, that he bore a registration ticket issued by the supervisor of registration of the town of Prosperity. These things being true, this objection must be overruled.

We will next consider the second group of exceptions, relating as they do to the alleged illegality of the votes cast by persons who resided in the territory annexed to the town of Prosperity as the result of the special election held on 3d of August, in the year 1899. It is not denied that the town of Prosperity had the power, under the laws

of this State, to annex the adjoining territory, but petitioners deny that such laws were complied with at the special elections therefor held 3d day of August, in the year 1899, in these particulars, to wit: 1. That no petition of the majority of the freeholders of the territory sought to be annexed was ever presented to the town council of Prosperity. 2. That no petition was submitted to such council, praying for an election to determine the question of such annexation. 3. That the town council of Prosperity appointed the managers to conduct such special election both in the territory proposed for annexation and also in the town of Prosperity, and that one of the managers of the territory proposed to be annexed was not a qualified voter of this State, and further, that of the three managers of the election box in said town, one did not serve at all, one served only a part of the time in which said election was to be held, and one served the entire time; and that the last named manager, of his own accord, called another citizen, who was not appointed for that purpose by the town council, to assist him in conducting such election, and that these two counted the votes and made the return of such election, which was not sworn to, nor was it dated; that the return of the managers of the box in the territory proposed to be annexed was not sworn to and dated. 4. That when the returns from the two said boxes came before the said town council of Prosperity, no action was taken by it thereon, and no declaration was made or published as required by law. 5. That said territory was not then, nor has it since been, declared a part of said town. 6. That at the special election held on the 8th October, 1900, on the question of "Dispensary" or "No Dispensary," that enough votes from this territory attempted to be annexed were cast to give a small majority in favor of the said dispensary. 7. That no registration of voters for the special election held on the 3d August, 1899, was ordered or was made, and, therefore, if no special registration was required for the special election on 3d August, 1899, then no special registration was required by law for the election held on the

8th October, 1900, on the question of "Dispensary" or "No Dispensary."

Let us now consider these questions in their order.    We remark just here that the legislation pertaining to the power of a town to extend its corporate limits may be found at pages 459 and 460 of the 22d vol. of Stat. at Large of this State.    Sec. 1 of such act is as follows: "Sec. 1. Any town or city council shall have power to extend the corporate limits of said city or town in the following manner: A petition shall first be submitted to said council by a majority of the freeholders of the territory which it is proposed to annex praying that an election be ordered to see if such territory shall be included in said town.    The said town council shall order an election after not less than ten days public advertisement.    At such election the qualified electors of the municipality shall vote at the usual voting precincts thereof, in a box provided for that purpose, and the qualified electors of the territory proposed to be annexed shall vote in a separate box to be provided for that purpose within the territory proposed to be annexed.    If a majority of the votes cast by the qualified electors of the town and of the territory proposed to be annexed, each aggregated separately, shall be in favor of annexation, or if neither give a majority against annexation, then the council shall publish the result of said election, and declare the annexed territory a part of said town * * * Any town increasing its territory shall file a notice with the secretary of State, describing its new boundaries."

The first and second questions presented cannot be sustained, because the facts established are incompatible with the action taken.    The very statute just above quoted shows that these very requirements lay at the very threshold of the action to be taken by the town council of Prosperity, in order to annex this additional territory.    That these papers are now lost or mislaid cannot, at this late day and in this proceeding, affect these matters.    They are, therefore, overruled.

As to the *third* ground, it may be said that while the lan-

guage of the statute in question does not in terms direct the said council to make the appointment of managers to hold the election in the territory proposed to be annexed, by implication such duty is laid upon the said town council, for it is to the said council the petition is to be presented. But even if this appointment of said managers was not lodged with said council, the voters of said annexed territory may be said to have adopted as their act these appointments made by the said council. Hence this objection is overruled. The facts, as testified to, show that the action of the managers in the town of Prosperity in conducting said election was entirely proper and regular.

The fourth objection is negatived by the facts in testimony, for as a result of said elections, the town council of Prosperity had the action taken by the voters sent to the secretary of State, and this action by it was a declaration of the result of said election, and these views dispose of the fifth ground of objection also. These objections are overruled.

As to the *sixth objection,* it will be overruled because the voters in the territory annexed to the town of Prosperity having been made a part of said municipality, had as much right to vote as any other qualified electors of said town.

In overruling the seventh objection we will say that the act under which the annexation was made did not require a special registration of the voters residing in the said annexed territory. They were to be "qualified electors." The managers determined this fact in favor of those persons voting at said election. No appeal was taken therefrom. It is now too late to raise such question, though we are bound to say that if such objection or appeal had been taken, it ought to have been overruled, under the facts here produced.

It is, therefore, the judgment of this Court, that the petition be dismissed and the restraining orders heretofore made be vacated. Inasmuch as this Court appointed Ellis G. Graydon, Esq., as special referee, to hear and report upon the testimony as to the facts in controversy between the

petitioners and the respondents, and we have been advised that his compensation for such services may be in question, we leave this question open.

Mr. Chief Justice McIver says: I concur in the result; and I desire to add that I do not understand that the matter of compensation to E. G. Graydon, Esq., as special referee, is presented to this Court in such a manner as justifies this Court in taking any action, or saying anything in regard to that matter.

Mr. Justice Jones *concurs in the result.*