## FLOWERS v. SHEARER.
### No. 4860.

Court of Civil Appeals of Texas. Amarillo.
June 14, 1937.

Rehearing Denied July 10, 1937.

1050

Adkins, Pipkin, Madden & Keffer, of Amarillo, and Oscar C. Flowers, of Perryton, for appellant.

Works & Bassett, of Amarillo, and R. T. Correll and J. W. Payne, both of Perryton, for appellee.

FOLLEY, Justice.

This is a contest of a local option election in Ochiltree county, Tex., held under the provisions of articles 666—1 et seq. and 667—1 et seq., Vernon's Annotated Penal Code, as enacted by the Second Called Session of the Forty-fourth Legislature, and more commonly known as "The Texas Liquor Control Act."

In 1933 (see Acts 1933, p. 971) art. 16, section 20, of the State Constitution was amended to authorize local option elections for the purpose of determining whether vinous and malt liquors not exceeding 3.2 per cent. alcoholic content by weight should be authorized. Ancillary to the adoption of this amendment, the Legislature passed an enabling act providing for such local option election (Acts 1933, c. 116).

Acting under the constitutional amendment and the enabling act aforesaid, Ochiltree county, as a political subdivision of the state, held an election in 1933 wherein by a majority vote the sale of

beer was legalized, which legalization obtained in said county to the date of the election under contest.

In 1935, art. 16, section 20, of the Constitution was again amended to authorize the sale of all liquors within the state of Texas in such counties or areas as should by local option legalize the same. Pursuant to this amendment, the Forty-fourth Legislature passed the "Texas Liquor Control Act," above mentioned, and at the same time repealed the 1933 beer law (Acts 1933, c. 116). Article 1 of this act (Vernon's Ann.P.C. art. 666—1 et seq.) provides for three methods of legalization of the various types of liquors, and likewise three degrees of prohibition. The first is the legalization of the sale of vinous and malt liquors that do not contain alcohol in excess of 4 per cent. by weight; the second, for legalization of the sale of vinous and malt liquors that do not contain alcohol in excess of 14 per cent: by volume; and the third, for the legalization of the sale of all liquors. The exact converse of these three methods of legalization of the sale of the various types of liquors are the three degrees of prohibition.

Ochiltree county is a dry county except for the legalization of vinous and malt liquors as above indicated. On March 8, 1937, a petition was presented to the Commissioners Court of Ochiltree county praying for an election to determine "whether or not it should be lawful to manufacture, sell, barter or exchange beer within the prescribed limits of Ochiltree county." An election was ordered by the Commissioners Court, the date of said election being set for March 20, 1937. This order was posted in each election precinct as required by law. Said election was held on March 20, 1937, and the official ballot ordered by the Commissioners Court and used in said election was as follows:
"Official Ballot
"Ochiltree County, Texas
"March 20, 1937
"For Prohibiting the Sale or
Manufacture of Beer
"Against Prohibiting the Sale or
Manufacture of Beer."

The agreed statement of facts stipulates that 422 votes were cast for prohibition and 312 votes were cast against prohibition in said election. The Commissioners Court therefore issued an order declaring the sale or manufacture of beer prohibited in Ochiltree county.

Appellee, J. H. Shearer, a citizen of Ochiltree county, and contestant below, attacked the validity of this election on the ground that the same was not in conformity with article 666—40 of Vernon's Revised Penal Code of Texas. The cause was tried before the district court of Ochiltree county without a jury and the court rendered judgment for the contestant, declaring said election illegal and void. From which judgment, Oscar C. Flowers, county attorney of Ochiltree county, Tex., and contestee below, prosecutes this appeal.

The Texas Liquor Control Act is in two main divisions. The first division has been brought down in Vernon's Annotated Penal Code as article 666—1 et seq. thereof. The second division is now known as article 667—1 et seq. of the Penal Code. In the original form as passed by the 44th Legislature, 2d Called Sess., they were known as articles 1 and 2 of chapter 467 (Vernon's Ann.P.C. arts. 666—1 et seq., 667—1 et seq.). In order to avoid confusion, we will call them article 1 and article 2. Article 1 expressly refers to "Intoxicating Liquors" and article 2 to "Malt Liquors" or "Beer."

In section 3-a of article 1 (Vernon's Ann. P.C. art. 666—3a) the word "liquor" is defined as follows:

"Whenever the word liquor is used in this Act it shall mean and refer to any alcoholic beverage containing alcohol in excess of four per cent by weight unless otherwise indicated."

In section 1 (c) of article 1 (Vernon's Ann.P.C. art. 667—1(c) the word "beer" is defined as follows:

"The word 'beer' as hereafter used in this Act and for the purpose of this Article, shall mean any malt beverage containing one-half (½) of one per cent (1%) or more of alcohol by volume and not more than four per centum (4%) of alcohol by weight."

■ From a study of article 1, we conclude that two distinct classes of local option elections are made possible with reference to intoxicating liquors, one where the sale of all liquors is made legal or illegal, and the other where various types of liquors are permitted or prohibited.

■ Article 666—35 of the Penal Code as passed by the Second Called Session of the 44th Legislature in 1935, sets out the first class of election and prescribes

the form of the ballot to be used as follows:

Sec. 35 (a): "At said election the vote shall be by official ballot which shall have printed or written at the top thereof in plain letters the words 'Official Ballot.' Said ballot shall have also written or printed thereon the words 'For the sale of liquor,' and the words, 'Against the sale of liquor,' or words appropriate to the election ordered."

This section of the article necessarily refers to the class of election first mentioned.

Article 666—40 sets out in detail the several ballots by which local option elections may be held where various types of liquor may be voted on, the first three ballots to legalize and the second three to prohibit the sale of liquor, as follows:

"Art. 666—40. The Commissioners Court upon its own motion may, or upon petition as herein provided shall, as provided in Section 32 (Art. 666—32), order local option elections for the purpose of determining whether liquor of the various types and alcoholic contents herein provided shall be legalized or prohibited.

"In areas where the issue or issues to be submitted pertain to the legalization of the sale of liquor, one or more of the following issues may be submitted:

"(a) 'For legalizing the sale of vinous and malt liquors that do not contain alcohol in excess of four per cent (4%) by weight,' and 'Against legalizing the sale of vinous and malt liquors that do not contain alcohol in excess of four per cent (4%) by weight.'

"(b) 'For legalizing the sale of vinous and malt liquors that do not contain alcohol in excess of fourteen per cent (14%) by volume,' and 'Against legalizing the sale of vinous and malt liquors that do not contain alcohol in excess of fourteen per cent (14%) by volume.'

"(c) 'For legalizing the sale of all liquors,' and 'Against legalizing the sale of all liquors.'

"In areas where the issue or issues to be submitted pertain to the prohibition of the sale of liquor of any type or types, one or more of the following issues may be submitted:

"(a) 'For prohibiting the sale of all liquors, except vinous and malt liquors that do not contain alcohol in excess of four per cent (4%) by weight,' and 'Against prohibiting the sale of all liquors, except vinous and malt liquors that do not contain alcohol in excess of four per cent (4%) by weight.'

"(b) 'For prohibiting the sale of all liquors except vinous and malt liquors that do not contain alcohol in excess of fourteen per cent (14%) by volume,' and 'Against prohibiting the sale of all liquors, except vinous and malt liquors that do not contain alcohol in excess of fourteen per cent (14%) by volume.'

"(c) 'For prohibiting the sale of all liquors' and 'Against prohibiting the sale of all liquors.'"

Appellee contends that since the form of ballot used in the election under attack does not conform to any one of the forms set out in article 1, that the election is therefore void. Appellee further contends that if there is no provision in article 1 for holding such an election in political subdivisions of the status of Ochiltree county, then there is no provision in the whole Liquor Control Act for holding such an election.

■ If we are limited to the provisions of article 1 of this act, we think that appellee's contention is correct. It is evident that the election as held did not conform to any provision of article 1 as far as the form of the ballot is concerned. Since this whole act is penal in nature, we think it must be strictly complied with. Moyer et al. v. Kelley et al. (Tex.Civ. App.) 93 S.W.(2d) 502; Griffin v. Tucker, County Atty., 51 Tex.Civ.App. 522, 119 S. W. 338; Gomez v. Timon et al., 60 Tex. Civ.App. 311, 128 S.W. 656.

There is no question as to the legal status of local option in Ochiltree county. The beer of the lesser content is the only beverage legalized in the county. It is otherwise dry. The manifest intention of the petitioners for the election was to prohibit and not to legalize the beverage. As the first three ballots of section 40 (Vernon's Ann.P.C. art. 666—40) are to legalize some type of intoxicants, no one of these forms could be used. We must, therefore, look to the last three forms of ballots of this section that prohibit instead of legalize intoxicants. From an examination of these we readily find that the last ballot described in this section is the only one that even approaches the situation in Ochiltree county. No other form could be

used except this one "for prohibiting the sale of all liquors." From a casual examination of this form of ballot it would seem to cover the situation in Ochiltree county, and an affirmative vote on such a ballot from a common sense viewpoint should prohibit the kind of beverage permitted in Ochiltree county. We think it would do so had not the Legislature defined "liquor" and "beer" as above set out. From these definitions it can be seen that the kind of beverage permitted in Ochiltree county is not "liquor" and an affirmative vote to prohibit "all liquors" would not prohibit the sort of beverage permitted. This form of ballot does not "indicate" any lesser alcoholic content than that in excess of the 4 per cent. which the definition says liquor is "unless otherwise indicated." We must therefore look to some other place in the Liquor Control Act for a method by which the majority of the voters may put their expressed will into effect.

■ Section 1 of article 2 (Vernon's Ann.P.C. art. 667—1), omitting the definition of "beer" in paragraph (c) thereof, because it has already been quoted, reads as follows:

"(a) The manufacture, sale and distribution of beer containing one-half (½) of one per cent (1%) or more of alcohol by volume and no more than four per centum (4%) of alcohol by weight is hereby authorized within the State of Texas.

"Unless otherwise herein specifically provided by the terms of this Act, the manufacture, sale and distribution of beer, as hereinafter defined, shall be governed exclusively by the provisions of Article II of this Act. Chapter 116, Acts of the Regular Session, Forty-third Legislature, and all amendments thereto, are hereby repealed.

"(b) It shall continue to be unlawful to manufacture, sell, barter or exchange in any county, Justice's Precinct or incorporated city or town any malt liquor containing in excess of one-half (½) of one per cent (1%) alcohol by volume except in counties, Justice's Precincts or incorporated cities or towns wherein the voters thereof had not adopted prohibition by local option elections held under the laws of the State of Texas and in force at the time of taking effect of Section 20, Article 16 of the Constitution of Texas in 1919; except that in counties, Justice's Precincts or incorporated cities or towns

wherein a majority of the voters have voted to legalize the sale of beer in accordance with the local option provisions of Chapter 116, Acts of the Regular Session of the Forty-third Legislature, beer may continue to be sold lawfully. It is expressly provided, however, that local option elections may be held in any county, Justice's Precinct or incorporated city or town within this State in accordance with the provisions of Sections 32 to 40 inclusive of Article I of this Act, for the purpose of determining from time to time whether the sale of beer shall be prohibited or legalized within the prescribed limits; and it shall be unlawful to sell beer in any county, Justice's Precinct or incorporated city or town wherein the same shall be prohibited by local option election, and lawful to sell beer under the provisions hereof in any county, Justice's Precinct, or incorporated city or town wherein the sale of beer shall be legalized by local option election."

From an examination of this section, we think it was clearly the intention of the Legislature to take care of just such a situation as now exists in Ochiltree county. This section unquestionably provides that elections may be held from time to time to determine whether the sale of beer shall be prohibited or legalized. This section is not referring to "liquor" but relates to "beer," and defines beer as that same beverage that is now legally sold in Ochiltree county. We call attention to the fact that the Legislature has not in this section, nor in the whole of article 2 (Vernon's Ann.P.C. art. 667—1 et seq.), set out any form for the ballot to be used in such an election. The only implication is that this section says that such an election may be held "in accordance with the provisions of Sections 32 to 40 inclusive of Article 1 of this Act." Appellee contends that this provision makes it mandatory that some form of ballot therein set out must be used, and since there is no form for such an election as desired in Ochiltree county, then no such election can be held. We cannot agree with this contention. It surely was not the intention of the Legislature to fail to provide some law by which the express will of the voters might be manifested. Certainly it could not have been the intention of the Legislature to thwart. the will of the people. The fact this provision of article 2 refers back to sections 32 to 40 of article 1 for guidance

with reference to elections would not mean that some form of ballot as therein set out, and only that, must be used, when no one of the forms therein would suffice. We think the reference was made for guidance for the petitioners for the election to the Commissioners Court, the orders therefor, the time and places of holding the elections, posting notices, and every other requisite of said article for such election, but we do not think such reference meant that some useless and ineffective form of ballot must be used. If such were the case, the Legislature would have nullified its expressed intention of bestowing upon the people the right to hold such a local option election. The construction that appellee seeks to place on this section would make it contradictory within itself, and would render it meaningless. Such construction would say in effect that although you can hold an election to determine whether the sale of beer shall be prohibited, nevertheless you shall hold it in accordance with section 40, and since section 40 does not provide any ballot for this purpose, therefore, you cannot hold an election at all. The fact that section 40 does not specifically provide a form of ballot for a beer election would not, we think, render article 2 nugatory in regard to such an election. We believe it was clearly the intention of the Legislature that this entire act should be taken as a whole for construction and section 2 of article 1 (Vernon's Ann.P.C. art. 666—2) provides:

"This entire Act shall be deemed an exercise of the police power of the State for the protection of the welfare, health, peace, temperance, and safety of the people of the State, and all its provisions shall be liberally construed for the accomplishment of that purpose."

■ By the language of the act we are convinced that the Legislature intended to pass laws with reference to the liquor traffic which would be effective in its regulation, and gave the courts of this state the above admonition to construe the law liberally in favor of its validity. Mayhew v. Power, Judge (Tex.Civ.App.) 104 S.W. (2d) 642.

We call attention specifically to a portion of the language of section 1, article 2 (Vernon's Ann.P.C. art. 667—1), above wherein it says:

"Unless otherwise herein specifically provided by the terms of this Act, the manufacture, sale and distribution of beer, as hereinafter defined, shall be governed exclusively by the provisions of Article II of this Act."

Therefore, since no form of ballot for an election is provided in article 2 and no form in article 1 will meet the issue sought to be submitted in Ochiltree county, we think that any form of ballot that will sufficiently inform the voters as to the issue submitted and at the same time intelligently express the will of voters in the election, would be sufficient for a valid beer election, granting that every other requisite of the law has been complied with.

■ From an examination of the ballot used in this election, we find that it seeks to prohibit the manufacture as well as the sale of beer. Appellee contends that there is no provision in either article 1 or 2 for submission of prohibition of the manufacture of beer, and therefore the election is void for this reason also. We cannot agree with appellee's contention in this respect. It may be true that the law does not authorize the question of manufacture of beer to be submitted to the voters, and that portion of the ballot relative to manufacture may be void. At least it is meaningless and, we think, merely surplusage, but it does not vitiate or destroy the valid portion relative to the sale of beer. It is evident that a majority of the voters in this election voted for the prohibition of both the sale and the manufacture of beer. We take it, therefore, if a majority of the voters were in favor of prohibiting both the sale and the manufacture of beer, certainly a majority of the voters favored the prohibition of its sale. No where in the Liquor Control Act do we find any ballot that mentions the word "manufacture." The whole theory of the act seems to base the will of the voters on the legalization or prohibition of the sale of the various beverages. The legalization of the sale carries with it, by the act, the legalization of the manufacture of intoxicants, under proper permits, in the territory involved, and likewise, the prohibition of the sale of the various intoxicants will prohibit their manufacture in such territory.

For the reasons stated, we think the court erred in holding this election void, and we hold that the election is legal and valid, and the judgment of the trial court is, therefore, reversed and judgment rendered herein in favor of appellant.

On Motion for Rehearing.

In his motion for rehearing, appellee earnestly insists that the last ballot form enumerated in section 40, supra, is such a ballot as would have met the requirements of the situation in Ochiltree county, and should have been used in the election involved, and that since said form was adequate, the election as held was a nullity because such form was not used. In support of this contention he says that the introductory paragraph immediately preceding the three ballot forms set out to prohibit the sale of certain beverages, by its language, takes the word "liquor" out of the definition in section 3-a of article 1 (Vernon's Ann.P.C. art. 666—3a), and "otherwise indicates" its alcoholic content. In other words, he says that an affirmative vote on the proposition "for prohibiting the sale of all liquors," as set out in section 40 (Vernon's Ann.P.C. art. 666—40), would prohibit the kind of beer sold in Ochiltree county. We note that the alcoholic content of the types of liquor are expressly labeled in the first two ballots to prohibit the sale of beverages in section 40. The first indicates 4 per cent., or less. The second indicates 14 per cent., or less. The alcoholic content in each of these ballot forms is definite and certain. We think the language used in these two forms would "otherwise indicate" the alcoholic content of these two beverages. But would the phrase "all liquors" in the third ballot form indicate that beer is included when the Legislature has said in this same article that "liquor is * * * any alcoholic beverage containing alcohol in excess of 4 per cent by weight unless otherwise indicated"?

Where is the alcoholic content otherwise indicated in such a ballot form? Let us put ourselves in the position of a voter at the polls in Ochiltree county. He comes in to vote on this question. He asks for a ballot. The presiding judge gives him a ballot with the exact language of the last ballot form of section 40 printed thereon. He sees the form is "to prohibit the sale of all liquors" in Ochiltree county. He knows what the Legislature says is meant by the word "liquor"; at least, he is charged with such knowledge. Furthermore, he knows that no "liquor" is then legally sold in Ochiltree county. In the event he desires to vote against the sale of "beer" in Ochiltree county, he cannot do so because the ballot does not

include beer; it only includes beverages that are already prohibited by law in Ochiltree county. There is certainly nothing on this ballot to "otherwise indicate" to him that beer is included in the phrase "all liquors."

Appellee contends that the Moyer Case, supra, is decisive of this case, and laments the fact that this court failed to recognize the controlling effect of that case. We think that if the Moyer Case has any application here, it precludes appellee's contention that the last ballot form in section 40 could have been used in the Ochiltree county election. Let us review that case briefly. An election was held in precinct No. 7 in Hidalgo county, in what is commonly called a wet precinct. All liquors of every description were already legalized in said precinct. The official ballot in that election had printed on it: "For Legalizing the Sale of All Liquors," and "Against Legalizing the Sale of All Liquors." In other words, the election was called to "legalize" the sale of liquors which were already legalized. The Court of Civil Appeals at San Antonio held that that election was voidable when seasonably attacked, for the reason that the "issue to be voted upon was not to legalize the sale of all liquors, but to prohibit the sale of all liquors" in the precinct involved. The court in that case held that in wet territory a ballot form to prohibit and not to legalize must be used, and that in dry territory, a ballot form to legalize and not to prohibit must be used. Then, if the holding of the Moyer Case is correct, an election to "prohibit the sale of all liquors" in Ochiltree county would also be voidable when seasonably attacked, for the reason that the county is already dry except that beer is permitted to be sold. In other words, if you cannot vote to make a precinct wet that is already wet, you cannot vote to make a county dry that is already dry. Certainly if the ballot to legalize the sale of all liquors in the wet precinct in Hidalgo county did not submit the proper issue in that election, then a ballot to prohibit the sale of all liquors would not submit the proper issue in Ochiltree county, since no liquor was permitted to be sold in such county at the time of the election in question, and no beverage of any kind was permitted to be sold therein except the beer of the alcoholic content of 4 per cent. or less.

We think the strongest application the Moyer Case has on the instant case

is that it lays down the rule that where the Legislature has set out a definite method to follow in an election on this subject, such method must be strictly pursued, and we think now, as in our original opinion, that this is a correct interpretation of the law. Inasmuch as the Legislature has definitely said that elections may be held to determine from time to time whether the sale of beer shall be legalized or prohibited in this state, but .failed to set out a form of ballot to be used in such an election, it is still our opinion that any ballot may be supplied that will sufficiently inform the voters as to the issue submitted and at the same time intelligently express the will of the voters. Kelly et al. v. Rapides Parish Police Jury, 184 La. 903, 168 So. 96, and cases therein cited; Hunter et al. v. Senn et al., 61 S.C. 44, 39 S.E. 235; 33 C.J. 630, § 283, and authorities therein cited.

There is still another reason why we cannot agree with appellee's contention that the ballot to prohibit the sale of all liquors was the form the Legislature intended should be used in such situations as exist in Ochiltree county. Suppose such a ballot had been used in such election, and the majority of the voters had voted against the prohibition of the sale of all liquors in Ochiltree county? In other words, they voted wet on the question. What would have been the effect of such an election? Would such an election have legalized the sale of all liquors in Ochiltree county? What sort of order would the commissioners' court of Ochiltree county have been warranted in issuing in declaring the results of such an election? Should they have declared the county wet or dry for the sale of all liquors? We shall not undertake to answer this question because it is not before us for decision, and so far as we know this exact question has never arisen in this state, but we are not unmindful of the confusion that might arise in such a situation. Of course, the Moyer Case holds that a vote on the proposition to legalize the sale of liquor in a wet precinct is a voidable election, and by analogy, it might be said that a wet vote on the proposition to prohibit the sale of liquor in dry territory also would be a voidable election, but we see a clear distinction in the two situations presented. In the Hidalgo precinct there was a definite ballot provided by law to meet the issue desired to be submitted. Because this form of ballot was not used, the election was voidable. The fact that the resulting vote was dry had nothing to do with the invalidity of the election. It would have been a voidable election if the vote had been wet. It simply was not an election at all when seasonably attacked, because the ballot provided by law was not used. Under appellee's contention, such would not be true in Ochiltree county. Appellee says that the ballot to prohibit the sale of all liquors is the correct ballot to use in Ochiltree county. If he is correct, an election using such a ballot in such a situation could not be successfully attacked on the ground that an incorrect ballot was used as in the Moyer Case, and the election upon such a ballot would be valid as far as the Moyer Case is concerned. This brings us back to the question as to what should the Commissioners Court do if a majority of the voters voted wet in such an election. If such a result would authorize the Commissioners Court to declare the county wet territory for the sale of all liquors, then the petitioners for the election would be placing themselves in a rather precarious position in calling for an election. To call an election for the purpose of voting out beer, they may subject themselves to the hazard of voting in the sale of all liquors. Certainly, the majority of the voters of Ochiltree county should be allowed to have or prohibit whatever kind of intoxicants they desire, if such desire is expressed in a valid election for that purpose, but no people should be forced to submit to an unnecessary hazard to accomplish such desires, whether those desires be for or against prohibition, and we do not believe the Legislature intended any such procedure.

The motion for rehearing is overruled.