**AKERS et al. v. REMINGTON et al.**

No. 13790.

Court of Civil Appeals of Texas. Fort Worth.

March 18, 1938.

Rehearing Denied April 15, 1938.

716

Jimmie Cunningham, of Graham, and M. E. Lawrence, of Eastland, for appellants.

Marshall & King and S. P. Boling, all of Graham, for appellees.

SPEER, Justice.

O. W. Akers and others, hereinafter called contestants, instituted this action against E. M. Remington, county judge, the four county commissioners, and the county attorney of Young county, hereinafter called contestees, to contest an election held in that county on November 6, 1937, to determine whether or not the sale of beer containing alcohol not exceeding 4 per cent. by weight should be prohibited. A restraining order was asked to be issued by the district court, enjoining contestees from declaring the result of the election and from attempting to enforce it, upon the ground that the election was void.

The petition alleges that in 1896, Young county, by vote, prohibited the sale of all intoxicating liquors therein. On March 3, 1934, by an election held throughout the county, the sale of beverages with an alcoholic content not exceeding 3.2 per cent. by weight was legalized.

Allegations are made that on October 11, 1937, a petition containing about 600 names was presented to the commissioners court, requesting the calling of an election throughout the county, for the purpose of determining whether or not the sale of beer containing alcoholic content of not exceeding 4 per cent. by weight should be prohibited. That the said petition was void and could not form the basis for calling such an election, for the reason it did not show that the signers were qualified voters of Young county, and did not show upon its face that the number signing the petition constituted 10 per cent. of the qualified voters of said county, taking the votes cast for Governor at the last general election as a basis for the computation.

The further ground is urged that, based upon said petition, the county judge, upon order of the commissioners court, did, on October 20, 1937, order an election to be held on November 6, 1937, throughout the county, for the purposes named. The validity of that order was challenged upon three grounds, viz.: (1) Because the commissioners court met in regular session on October 11th, and could remain in session only one week, and the order was not made in term time; (2) because the order being made on October 20th was not shown to have been made either at a called term of the court or a special term called for that purpose; and (3) because the order for election was made by the county judge and not by the commissioners court.

The validity of the election is attacked for the further reason that the persons named by the court to hold the election in the various precincts are not shown by the

returns of the election to have conducted the voting at their respective boxes.

It is also alleged that the election was void, for the reason a wrong ticket was furnished and prescribed for use, the affirmative ticket reading: "For prohibiting the sale of beer containing alcohol not exceeding four per cent by weight." The negative ticket substituted "Against" in lieu of "For" on the affirmative. The contention by contestants being that since the percentage of alcoholic content of beer that was being voted on was greater than that legalized by the 1934 election, the ticket should have been whether or not the sale of beer would be "legalized" instead of "prohibited," as stated in the ticket.

Contestants' petition has copies of the several instruments, orders, judgments, notice of contest, etc., along with the ticket used at the election, attached, and made a part thereof. Prayer was that the election be declared void and the officers restrained from declaring the result, and enforcing it thereafter. The district judge indorsed on the petition a show cause order for hearing on November 23, 1937, and notice was given to contestees in accordance therewith.

The contestees answered at the time set for the hearing, denying generally and specially all the allegations of the petition; that the commissioners court had, on the 13th day of November, 1937, prior to the hearing, met and canvassed the returns of the election, declared the result, and by its orders duly entered, put the same into effect; that the prayer for injunction, restraining the commissioners court from doing these things, presented no issue for the court, but was now moot.

A special answer was presented, to the effect that contestants show no justiciable interest in the election, and therefore show no grounds which they can urge against the validity of the election. The petition upon which the election order was made, and all orders and decrees entered in connection therewith, are likewise pleaded by contestees, with a prayer that contestants take nothing and that the election be declared valid and that the injunctive relief be denied.

At the hearing before the court, without a jury, the record testimony was introduced, along with the only oral evidence of the sheriff, to the effect that a notice as issued was posted on October 30, 1937, in each voting precinct of the county, at public places, as required by law. By agreement, both the hearing on injunction, as well as the election contest, were presented and determined at the same time on the same testimony. Two separate and distinct judgments were entered by the court on that date; one denying the injunctive relief, and the other denying the contest and holding the election valid. The contestants excepted to each and gave notice of appeal to this court. The judgments are in general terms, denying in each instance the relief sought by contestants. There is in the transcript a written application by contestants, requesting the court to set the amount of a supersedeas bond in the injunction judgment, which request was granted by the court, and the bond set at $1,000. The bond contains the usual provisions of liability in such obligations, and, among other things, recites:

"The condition of the above obligation is such that whereas, judgment was rendered on the 23rd day of November, 1937, in the above numbered cause, in favor of contestees, and against the above named contestants and others, denying the injunction relief prayed for, and adjudging all costs be taxed against said contestants, and whereas the said contestants desire that said judgment be stayed pending appeal therefrom," etc.

No reference whatever is made in the bond to the judgment entered denying the contest and holding the election valid. We doubt if an appeal has been perfected from the latter judgment; the injunctive relief could have been denied upon the ground pleaded by contestees, that contestants had no justiciable interest in the matter; however, it would have been error for the court to so hold, and the denial of that relief was in effect to hold the election valid, yet an election cannot thus be contested. But since the two judgments were entered upon the same testimony at the same hearing, the election being properly contested and passed upon by the court, and because of the liberality conferred by statute in amending such bonds, and all parties having treated the appeal as one for the contest, we have decided to determine it as though properly appealed. We have no inclination to avoid a discussion of what appears from the record to be the real issue.

Contestants urge thirteen points or propositions germane to assignments of error properly made and brought into their briefs. These propositions may be classi-

fied into three groups, as follows: (a) The court erred in holding that the petition upon which the commissioners court acted and the several orders entered thereon were legal; (b) the court erred in holding the election valid when the record disclosed that the persons named in the election order to hold the election did not act, but in some boxes the voting was conducted by persons not so named, and (c) the court erred in holding that the ticket ordered and provided by the commissioners court to be used at the election was a proper one.

The contestants insist that the petition for election is insufficient and cannot support the subsequent orders of the commissioners court because it does not recite that the petitioners are qualified voters of Young county and does not further show that the number of signers constitute 10 per cent. of the qualified voters of the county, based upon the test given by law. We cannot agree with this contention.

Omitting the caption and address to the commissioners court and the signatures, the petition reads:

"The undersigned, duly qualified electors under the laws in the State of Texas, respectfully petition your Honorable Body to call and order an election as provided by law to determine the following question:

"1. To determine whether or not a sale of beer containing alcohol not exceeding four per cent by weight shall be prohibited in Young County, Texas, with the proposition to be submitted to the voters according to law as follows:

"For, prohibiting the sale of beer containing alcohol not exceeding four per cent by weight.

"Against, prohibiting the sale of beer containing alcohol not exceeding four per cent by weight.

"The Liquor Control Act article 1, section 40, subdivision 1 [Vernon's Ann.P.C. art. 666—40] is hereby referred to and made a part of this petition for all purposes, and being under what is commonly called House Bill No. 5, the Acts of 45th Legislature, 1937, effective September 1st, 1937. Respectfully submitted." Approximately 600 signatures are shown in the record.

Articles 666—1 et seq. and 667—1 et seq., Vernon's Ann.P.C., constitute what is known and legally designated as the "Texas Liquor Control Act," and as we shall hereinafter mention these articles and subdivisions, that act is referred to without repeating its legal name and statutory designation.

Article 666—32, among other things, provides: "The Commissioners Court of each county in the State upon its own motion may order an election to be held by the qualified voters in said county, to determine whether or not the sale of liquors shall be prohibited or legalized in such county, and such Court shall order a local option election whenever petitioned to do so by as many as ten (10) per cent of the qualified voters of said county, * * * taking the votes for Governor at the last preceding general election as the basis for determining the qualified voters in any such county, or political subdivision."

There is no particular form prescribed by statute for a petition to the commissioners court for this purpose. The objections urged to the form of the petition before us are that it does not recite that the signers are qualified voters or electors of Young county, and that it does not show upon its face that those who signed it constitute 10 per cent. of the qualified voters in Young county, based upon the vote for Governor at the last general election. It will be observed by the statute from which we have quoted that the court may order the election upon its own motion; the urgent solicitation by 600 voters, regardless of the manner in which they expressed their desires, would be highly conducive to the court to lend an ear, and would doubtless result in such an election being ordered, under the exercise of that court's option to do so of its own accord.

Under this group of assignments, it is urged that because by article 2348, R.C.S., the regular term of a commissioners court shall convene on the second Monday in each month and may continue in session one week, and the petition having been presented on October 11th, the date on which the court convened and the order for the election being on October 20th, the latter was not made in term time, and absent an order calling a special term or one extending the then present term to October 20th, the order entered on the latter date was void.

Article 2348, to which we have above referred, further provides: "Special terms [of the Commissioners Court] may be called by the county judge or three of the

commissioners, and may continue in session until the business is completed."

At the regular meeting of the commissioners court, held on October 11th, the minutes of that court show the following order: "There also came on to be considered a petition filed containing something over six hundred names, asking that a beer election be called in Young County. Said petition was presented and action deferred on same until October 20th, 1937, at which time said Court is to return and act on said petition, giving the County Judge that much time to check the names against the poll tax list to see if there are a sufficient amount of voters on said petition."

The subsequent orders of the court are complained of and for the convenience of reference, we show them here.

On October 20th, the date to which action on the petition was "deferred" by the court, the minutes read in part: "At a regular meeting of the Commissioners Court on this the 20th day of October, 1937, said meeting having been recessed from Monday, October 11th, 1937, with the following members present: * * * * "

"Among other things there came on to be considered the question of calling a beer election, a petition having been presented containing more than six hundred (600) names and there being required only three hundred thirty one names. The Court decided that the petition was in legal form and had the required number of signatures. They therefore ordered the county judge, pursuant to sections 32 and 33, article 1, c. 467, Acts of the Second Called Session of the 44th Legislature of Texas, as amended [Vernon's Ann.P.C. arts. 666—32, 666—33], to call the election to be held on November 6th, 1937, in all voting boxes in Young County, and that the officers of elections heretofore appointed by this court on the 10th day of February, 1936, do and are hereby appointed to hold said election."

On the same day, to wit, October 20, 1937, the following order was made:

"Pursuant to the provisions of sections 32 and 33 of article 1, H.B. 77, Acts of the Second Called Session of the 44th Legislature of Texas, as amended, there is hereby ordered an election to be held in all voting boxes of this county on the 6th day of November, 1937, for the purpose of voting on the question of to determine whether or not the sale of beer containing alcohol not exceeding four per cent by weight shall be prohibited in Young County, Texas.

"Said election shall be held on said date at the regular voting places within the above designated area, and the officers of election heretofore appointed by this court on the 10th day of February, 1936, and qualified under the laws of this State to hold elections at the respective voting places in said Young County, Texas, be and they are hereby directed to hold this election.

"It is further ordered that the Clerk of this Court shall post or cause to be posted at least one (1) notice of this order in each voting precinct within the limits of said designated area for at least six (6) days prior to the aforesaid 6th day of November, 1937.

"The vote of said election shall be by official ballot which shall have printed or written at the top thereof in plain letters the words 'Official Ballot' and said ballots shall also have written or printed thereon the words:

" 'For Prohibiting The Sale of Beer Containing Alcohol Not Exceeding Four Per Cent by Weight.'

" 'Against Prohibiting The Sale of Beer Containing Alcohol Not Exceeding Four Per Cent by Weight.'

"Those voters favoring the proposition on the ballot will erase the 'Against' proposition by drawing a pencil line through it. Those voters that oppose the proposal shall erase the 'For' proposition by drawing a pencil line through it. The Clerk of this Court shall furnish the presiding officer of each voting box within the above designated area, a number of official ballots not less than twice the number of qualified voters at such voting boxes.

"Said election shall be held in compliance with the General Election Laws of Texas, unless otherwise specified.

"After the polls are closed the officers of the election shall proceed to count the votes and within three days thereafter shall make return of the results of said election to the Commissioners Court of this County.

"By order of the Commissioners Court of Young County, Texas, on the 20th day of October, 1937.

"E. M. Remington, County Judge."

Based upon the provisions of article 666—32, from which we have quoted, we conclude the petition presented con-

tains all the necessary requisites and was a sufficient compliance with the law. The conditions necessary for its validity, insisted upon by contestants, are not contained in the act. The commissioners court could adopt any means it thought right and proper to ascertain if those signing the petition were legal voters of Young county and whether or not 10 per cent. of the qualified voters of the county had signed it. The order entered deferred action until an investigation was made, naming October 20th as a time at which the court would return and consider the petition and, if found to be valid and containing the requisite number of signatures, a final order would then be entered. We should pause here long enough to say that the wording of that order "deferring" action until October 20, 1937, as well also setting that date on which the court would return to act on the petition, and the language used in the order entered on that day, clearly show the latter date was one to which the then regular term of the court was recessed, and thereby, in effect, became a special or called session of the court for the particular purpose named. The subsequent order entered on the 20th day of October found that while the petition contained more than 600 names, only 331 signatures were required, and declared the petition was otherwise regular and valid.

■■■ Among the assignments of error in this group, it is claimed the final order for the election was made by the county judge and not by the commissioners court; that the court had no authority to delegate the duty of calling the election to the county judge. The entry in the minutes of which complaint is made may be said to be somewhat irregular or confusing in the respect mentioned, yet taken as a whole it is clear from the reading that the court, and not the county judge, ordered the election. We further quote a part of the judgment, which reads: " * * * The court decided that the petition was in legal form and had the required number of signatures. They, therefore, ordered that the County Judge, pursuant to sections 32 and 33, article 1, Acts of the Second Called Session of the 44th Legislature of Texas, as amended, *do call the election to be held on November 6, 1937,"* etc. * * * (Italics ours). While the "Order of Election" above quoted is signed by the county judge, it concludes with the expression, "By order of the Commissioners Court of Young County, Texas, on the 20th day of October, 1937." A certified copy of this order was used by the clerk in issuing and posting the "Election Notices." Preceding the "Order" the clerk included in the notice the following: "Notice is hereby given that on the 20th day of October, 1937, in regular session of the Honorable Commissioners Court within and for Young County, Texas, duly met, passed and entered of record in the minutes of the said Court the following order:" Then follows the order above quoted, signed by the county judge. The most that can be said of the authority delegated to the county judge is that he should prepare and have entered in the minutes the order and judgment agreeable with the findings of that body. The county judge is the presiding officer of the commissioners court; he is a part of the court, and its decrees will not be stricken because its presiding officer is instructed to perform the ministerial function of preparing a suitable judgment to be entered in the minutes, showing a true statement of what the court had decreed. No contention is made that any person was deprived of the right to freely express his or her desire and opinion, or was denied the right to vote and so express themselves upon the issue, because of fraud, deceit, or for a lack of full and complete information. The courts of this state have had few occasions to discuss the many phases of the State Liquor Control Act, and especially the election provisions contained in it. Border v. Abell, County Atty., Tex.Civ. App., 111 S.W.2d 1186, involved the validity of an election for the issuance of bonds. Following Norman v. Thompson, 96 Tex. 250, 72 S.W. 62, that court held it could not determine matters pertaining to the election which would not affect the fair expression of the electors on the issue to be determined. We do not question the soundness of the principles there discussed, but the facts are not entirely analogous to those before us, hence we have not thus limited this discussion. In the instant case, the petition, orders, judgments, and decrees are so inseparably linked together by the wording of each that there is no doubt in our minds of their validity; the assignments of error challenging them must therefore be overruled.

■■■ The second group of assignments which we have classified as (b) above, complain that because the election returns do not show that the persons named by the court to hold the election in each of the precincts of the county, did so, and for that reason the result declared at those

boxes should be disregarded. No allegation is made, nor was there testimony offered tending to show this irregularity was the result of fraud or that any person was thereby deprived of the right of suffrage, nor that the result of the election was affected thereby, nor is it attempted to be shown that the law in regard to such matters was not complied with. By article 3001, R.C.S., it is provided that where a presiding judge of an election fails to act, the voters present may appoint their own presiding officers and those so appointed have the same authority as if they had been regularly appointed by the commissioners court. It is not claimed that these conditions did not exist, and that the provisions of that statute were not complied with in the instances complained of. There is no merit in the contention and we shall give it no further attention here.

The third or last group of assignments complaining that the wrong ticket was used at the election, under order of the court, has occasioned much deliberation upon our part. We have concluded they should be overruled and our reasons for doing so are these:

The record in this case shows Young county was in all respects "dry" prior to national prohibition. When that Act of Congress was repealed in 1933, there was a malt beverage being sold in "wet" territory known as 3.2 beer. We shall not here discuss the merits or demerits of that beverage. By House Bill No. 122, which after passage became chapter 116 of the 43d Legislature Regular Session, effective September 15, 1933, with a lengthy preamble relating to this beverage, said to contain not more than 3.2 per cent. alcoholic content by weight, such beer was made legal in counties of the state which had not previously been voted "dry." In the latter type of counties it was there provided that by a majority vote, cast at an election held for that purpose, such beer could be legalized either in the county or in any political subdivisions thereof. In contemplation of the passage of an amendment to the State Constitution, relating to intoxicating liquors, at an election for that purpose to be held in 1935, the Legislature deemed it advisable to regulate and control by license and tax the beverage known as 3.2 beer prior to that time. By the act, at section 1 (d) it was provided: "The word 'beer' as hereinafter used in this Act and for the purposes of this Act shall mean beer containing one-half (½) of one

per cent (1%) or more of alcohol by volume and not more than three and two-tenths (3.2%) per centum of alcohol by weight."

The record in this case shows that pursuant to the above provision, an election had been held in Young county to determine if 3.2 beer should be legalized in that county, which election resulted in favor of the sale and license; that the result of the election was declared and put into effect, and had not been changed by a vote of the electors of that county prior to the time the election was ordered and held, out of which this appeal grew.

At an election held for that purpose throughout the state, in August, 1935, article 16, § 20, of our State Constitution was repealed. The article and section thus repealed formerly comprised the state's constitutional prohibition. By the election held the Constitution was so amended that the Legislature could thereafter pass such laws as it deemed expedient for the regulation of the manufacture and sale of intoxicating liquors. By the amendment it is specifically provided that the Legislature should enact laws whereby the qualified voters of any county or political subdivision of the county could, by a majority vote at an election held for that purpose, determine whether the sale of intoxicating liquors, for beverage purposes, should be prohibited or legalized within the prescribed limits, and that at such elections, sales of liquors of various alcoholic contents should be determined. Recognition was given in the amendment to territory, which had voted for the sale of beer not in excess of 3.2 per cent. alcoholic content by weight, under the provisions of chapter 116, Acts of 43d Legislature above mentioned.

Pursuant to the 1935 constitutional amendment, the 44th Legislature repealed the 1933 beer act (Acts 1933, chap. 116) and passed the State Liquor Control Act, now article 666—1 et seq., Vernon's Ann.P.C., and the 45th Legislature amended article 666—1 et seq., in many respects, and added article 667—1 et seq. These articles as amended and so passed constitute the act as it now exists, and as it existed when this suit originated.

In keeping with the provisions of the Constitution as amended, the act is divided into two parts, the one, article 666—1 et seq., deals with "Intoxicating Liquors," and the other article 667—1 et seq., deals with "Malt Liquors" or "Beer." The former only af-

fects this appeal in so far as its general provisions are applicable, since the election now under consideration was a "Beer" election. The definition of beer given in chapter 116 of the 1933 act was repealed, and the present act, by article 667—1(b), under the head of Malt Liquors, and Definitions, provides: "The term 'beer' means a malt beverage containing one-half of one per cent or more of alcohol by volume and not more than four (4) per cent of alcohol by weight, and shall not be inclusive of any beverage designated by label or otherwise by any other name than beer."

■ With reference to elections required by the act, it is provided in article 666—40, with respect to kind of ticket to be used, as follows:

"In areas where the issue or issues to be submitted pertain to the *prohibition* of the sale of liquor of any type or types, one or more of the following issues may be submitted:

"(a) *'For* prohibiting the sale of vinous and malt liquors that do not contain alcohol in excess of four per cent (4%) by weight' and *'Against* prohibiting the sale of vinous and malt liquors that do not contain alcohol in excess of four per cent (4%) by weight.'" (Italics ours.) The form of the ticket here prescribed was the one used in this case, except where the quotation used the words, "Vinous and malt liquors" the ticket used the word "beer." These terms are synonymous as defined by the act above quoted.

■ The constitutional provision above referred to, which requires the Legislature to give the electors an opportunity for voting on the sale of intoxicating liquors of various types and various alcoholic content, authorizes, if it does not require, the statutory provisions contained in the definition of beer, and the forms of ballot to be used in the respective elections involving the different classes of liquor.

■ By the provisions of article 666—40, if the area in which a vote is to be taken is dry as to the particular class of liquor to be voted upon, the issue shall be submitted by a ticket reading "For *legalizing*" and "Against *legalizing*" the sale of the particular type or kind as to alcoholic content. But in areas that are wet, with respect to the type to be voted on, or, in other words, in areas like Young county, where they had previously voted for the sale of beer, that territory was "wet" with respect to that type of liquor. Moyer v. Kelley, Tex.Civ.App.,

93 S.W.2d 502, writ dismissed; Flowers v. Shearer, Tex.Civ.App., 107 S.W.2d 1049; Whitmire v. State, 130 Tex.Cr.R. 372, 94 S. W.2d 742.

■ It is contended by contestants that because the type of beer voted in Young county in 1934 was then known as 3.2 beer, it was only "wet" as to 3.2 beer, and if it was desired to vote on 4 per cent. beer, it should have provided and required a ticket to "legalize" that kind of beer, instead of to "prohibit" the sale of beer. At the time the beer election was held in Young county, in 1934, the legal definition of the 3.2 beverage was "beer." That statutory definition was repealed and a law passed, which defined "beer" to mean a malt beverage which contains not more than 4 per cent. alcohol by weight. The petition presented to the commissioners court and all orders thereon referred to an election concerning "beer" and this must be construed to mean that beverage so designated by the then law, which meant a malt beverage containing not more than 4 per cent. of alcohol by weight. We think it is inevitably true that Young county, at the time of the election in question, was "wet" as to beer, as that term is defined, and that the proper ticket to be used at the election was one to determine whether or not the sale of "beer" would be *prohibited.* It would have been improper to submit the issue of whether or not something would be *legalized* which they already had.

■ It must be conceded that, under the peculiar circumstances of this case, none of the forms of tickets provided by law exactly fitted the conditions that existed. But unquestionably, as above stated, the Legislature had the right to prescribe a form of ticket to be used when a particular kind of election was to be held (Adamson v. Connally, Tex.Civ.App., 112 S.W.2d 287), but as stated by the Amarillo court, in Flowers v. Shearer, supra, we believe that where no form of ticket is provided by the act, which exactly fits the conditions existing in the area to be affected, a ticket such as is provided for by the act which nearest conforms to that condition, and which is sufficient to inform the voter as to the issue submitted, and which, when cast, will intelligently express the will of the people, is sufficient, and the result of an election should not be defeated, solely because the exact form provided could not be used.

The parties have discussed, in their respective briefs, the effect this election would

have upon persons engaged in the sale of 3.2 beer in Young county, if any there be, and it is aptly stated in contestees' brief that neither the district court nor this court has or will have jurisdiction to determine whether or not the election here contested would affect those thus engaged. That question is not before us, and we express no opinion on it.

We are yet of the opinion, as expressed by us in the case of Mayhew v. Power, Tex.Civ.App., 104 S.W.2d 642, the act must be construed as a whole (article 666—2), keeping in mind the expressed purpose of the Legislature to make the whole act effective; and that each provision must be construed, if possible, so as to make the act effective for the purposes intended, and not so as to make it a nullity and ineffective. All assignments of error are therefore overruled, and the judgment of the trial court relating to the injunction and election contest is in all things affirmed.